IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

FEB 19 1998

| | | |
|---|---|---|
| THE STATE OF TEXAS, § <br>     Plaintiff, § <br> § <br> v. § <br> § <br> THE AMERICAN TOBACCO § <br> COMPANY, ET AL., § <br>     Defendants. § | | CIVIL NO.: 5:96-CV-0091 <br><br> JUDGE: DAVID FOLSOM <br><br> MAGISTRATE JUDGE: <br>   WENDELL C. RADFORD |

**BRIEF IN SUPPORT OF MOTION TO INTERVENE TO OBTAIN A DECLARATION OF RIGHTS BY DALLAS COUNTY, DALLAS COUNTY HOSPITAL DISTRICT, EL PASO COUNTY, EL PASO COUNTY HOSPITAL DISTRICT AND HARRIS COUNTY, HARRIS COUNTY HOSPITAL DISTRICT**

TO THE HONORABLE JUDGE OF SAID COURT:

### Introduction

1. The Court approved and adopted the settlement between the Texas Attorney General and the Tobacco Defendants in its Final Judgment of January 22, 1998, over which it retains plenary power.

2. The Court ordered all challenges to the settlement and Final Judgment to be brought before it. The Tobacco Defendants say the settlement fully releases Movants' claims. Both Movants and the Attorney General say the Attorney General did not represent Movants, had no authority to settle their claims and the settlement does not release Movants' claims. This creates an actual controversy over the settlement incorporated in the Final Judgment.

3. Movants do not wish to disrupt the settlement of the claims brought by the Attorney General in this case. Movants do not wish to hinder, delay or interfere with the payments by the Tobacco Defendants to the State of Texas under the settlement.

4. Movants have claims independent of the State of Texas which were not made by the Attorney General in this case. Movants wish to preserve their right to assert their claims against the Tobacco Defendants (if they so choose) in another forum or cause.

1916

BRIEF IN SUPPORT OF MOTION TO INTERVENE TO OBTAIN A DECLARATION OF RIGHTS BY DALLAS COUNTY, DALLAS COUNTY HOSPITAL DISTRICT, EL PASO COUNTY, EL PASO COUNTY HOSPITAL DISTRICT AND HARRIS COUNTY, HARRIS COUNTY HOSPITAL DISTRICT - Page 1     LITDAL:175224.1 34856-1

5. Because there is an actual controversy between the parties over the scope of the release in the settlement, this Court may declare the rights and other legal relations of Movants, the State of Texas and the Tobacco Defendants, whether or not further relief is or could be sought by Movants, with the force and effect of a final judgment. 28 U.S.C. § 2201; Fed. R. Civ. P. 57. The Court can declare that Movants' claims against the Tobacco Defendants are unaffected by the Final Judgment and settlement and Movants will have obtained all the relief they seek in this case.

6. In the unlikely alternative that the Court declares that the Texas Attorney General somehow inadvertently acquired the authority to represent Movants and released their claims as part of the settlement, then in equity, good conscience and under the law, Movants ask the Court to reform the Final Judgment to grant them compensation for their claims. Although Movants do not desire to complicate the settlement of this case, their duty to protect their taxpaying constituencies compels them to seek such relief.

**Movants have standing to intervene to obtain a declaration of their rights.**

7. Movants come to the Court pursuant to its order that it shall have exclusive jurisdiction over the provisions of the Comprehensive Settlement Agreement and Release, the Agreed Order Granting Joint Motion to Approve Settlement Agreement and the Final Judgment. *See* Agreed Order Granting Joint Motion to Approve Settlement Agreement at ¶ 4, adopted and incorporated by reference in Final Judgment at ¶ 2.

8. Movants' motion to intervene to obtain a declaration of their rights under the settlement is timely because the settlement was first made public on January 16, 1998. Until then, Movants had no notice that any language was to be included which might be construed to release Movants' claims against the Tobacco Defendants. Instead, Movants and the Attorney General have concurred that the Attorney General does not represent Movants and lacks authority to settle Movants' claims.

9. Movants immediately filed an amicus brief on January 20, 1998, warning the Court of the controversy to come, when they first learned of the settlement language the Tobacco Defendants now say releases Movants' claims. Movants then timely filed motions pursuant to Fed.

R. Civ. P. 24, 57, 58, 59, and 60 to intervene to obtain a declaration of their rights vis-a-vis the State of Texas and the Tobacco Defendants under the Final Judgment and settlement and, contingent thereon, for such other relief as may be necessary to preserve their rights. These motions comply with the Court's order that it shall have exclusive jurisdiction over the settlement.

### An actual controversy exists between the parties over the effect of the settlement on Movants' rights.

10. The Attorney General and Movants believe the settlement does not release Movants' claims against the Tobacco Defendants and any language to the contrary is ineffective to release Movants' claims. However, the Tobacco Defendants assert just the reverse.

11. By letter of February 12, 1998 to the Harris County Attorney, a copy of which is attached hereto as Exhibit A, Stephen R. Patton, counsel for Phillip Morris, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, and United States Tobacco Company stated as follows:

> The January 16, 1998 Settlement Agreement referenced in your letter was entered into by the State of Texas, through its duly authorized representative, Attorney General Dan Morales. The Agreement expressly defines the "State of Texas" to include "any department, subdivision or agency of the state, regardless of whether a named plaintiff," and specifically provides that it "shall be binding on and inure to the benefit of . . . all subdivisions, public entities, public corporations, [and] instrumentalities" of the State. Pursuant to the Agreement, Defendants agreed to make billions of dollars of payments and to provide other consideration in exchange for a release and discharge from any and all manner of claims, damages, and liabilities of any nature whatsoever "that the State of Texas (including any of its . . . subdivisions, political and otherwise), public entities, corporations, instrumentalities and educational institutions, and whether or not any such entity participates in the Settlement" may have against Defendants.
>
> <u>Accordingly, any claim that Harris County or the Harris County Hospital District believe they may have for reimbursement of medical costs allegedly attributable to smoking-related illnesses or with respect to any other matter covered by the Settlement Agreement has been finally released and discharged.</u>

(emphasis added) Thus, the Tobacco Defendants expressly raise the actual controversy of which Movants warned. The Court must correct the Tobacco Defendants' error by granting the declaratory ruling Movants seek. Otherwise, the Tobacco Defendants simply will file a motion to dismiss any action Movants bring in another forum (which the Attorney General urges Movants to pursue

instead of intervening), based on the alleged full release of Movants' claims referred to in the Tobacco Defendants' letter.

12. This Court's right to control its judgments and the interests of judicial economy demand the Court to declare the effect, if any, of the settlement on Movants' rights in this case, at this time, before there is a final judgment with an unknown preclusive effect. The Attorney General errs in arguing that intervention is unnecessary because Movants have no interest in the settlement. His stance begs the question raised by the Tobacco Defendants' letter. A ruling is necessary, so intervention is necessary.

13. Granting Movants relief will not realize the Attorney General's fear that allowing even one intervention will create a litigation quagmire with hundreds of intervenors delaying final resolution. Movants do not seek to press their claims against the Tobacco Defendants in this case, only to protect their claims through a declaratory ruling.

### The settlement did not release Movants' claims against the Tobacco Defendants.

14. The ruling Movants seek is not controversial. Instead, the Tobacco Defendants' position requires an odd logic. Their view implies that somehow the Attorney General inadvertently and unwillingly became Movants' attorney. They then gratuitously bestow upon him the authority to settle Movants' claims without Movants' knowledge or consent:

- although neither the Attorney General nor Movants believed that the Attorney General represented Movants or had such authority,

- although Movants never took any action to cloak the Attorney General with apparent authority to represent them, but have consistently denied it,

- although the Attorney General expressly denied the intention or authority to represent political subdivisions like Movants when he opposed the TASB Risk Management Fund motion to intervene and, more recently, the Montgomery County Hospital District motion to intervene,

- although the Attorney General only asserted limited claims for the State of Texas and never asserted a claim on behalf of any of the Movants,

- although Movants never provided the Attorney General with any information about their claims against the Tobacco Defendants,

- although the Attorney General's damage model did not take into consideration any element of Movants' claims against the Tobacco Defendants,

- although the Attorney General's settlement makes no provision whatsoever for compensation to Movants for their claims, and

- although Movants never ratified the settlement and instead immediately objected to it, if it affects their claims.

15.  The Tobacco Defendants' position is, of course, untenable. Even if an attorney assumes to act for another, it does not make him that party's attorney and gives him no authority to bind that party. *Arnold v. Fort Worth & D. S. P. Ry. Co.*, 8 S.W.2d 298, 301 (Tex. Civ. App. -- Amarillo 1928, no writ). Acting for one's own client, as the Attorney General did for the state, without assuming to act for others is even less basis for such imputed authority.

16.  Even where the attorney-client relationship exists, an attorney's power is limited by his client's superior right of control.

> A compromise by an attorney without his client's knowledge or consent, which has the effect of depriving the client of his day in court, is an unauthorized act . . . [and] a judgment based thereon will be set aside.

*Johnson v. Rancho Guadalupe, Inc.*, 789 S.W.2d 596, 598 (Tex. App. -- Texarkana 1990, writ denied). *See also Burnaman v. Heaton*, 240 S.W.2d 288, 291 (Tex. 1951) (when trial court has knowledge that party does not consent to judgment agreed to by party's attorney, it should refuse to sanction the agreement). In this case, Movants did not consent to the settlement and their attorney did not agree to it, since the Attorney General is not their attorney.

17.  The Attorney General may not forge a settlement agreement over the express objection of his alleged client. *L.U.L.A.C. v. Clements*, 999 F.2d 831, 842 (5th Cir. 1993) (en banc), *cert. denied sub nom. L.U.L.A.C. v. Attorney General of Texas*, 114 S.Ct. 878, 510 U.S. 1071, 127 L.Ed.2d 74, *cert. denied sub nom. Wood v. Attorney General of Texas*, 114 S.Ct. 878, 510 U.S. 1071, 127 L.Ed.2d 74, *cert. denied sub nom. Attorney General of Texas v. Entz*, 114 S.Ct. 878, 510 U.S. 1071, 127 L.Ed.2d 74.

18.  Federal and Texas jurisprudence are compatible on the authority of an attorney to settle a case. *Thompson v. Continental Emsco, Co.*, 629 F.Supp. 1160, 1164 (S.D. Tex. 1986). No

binding settlement arises where the alleged implied authority to settle is vigorously disputed, where counsel does not believe he had authority to settle, where it is not claimed that anyone was cloaked with authority to make the settlement and where there is no showing of ratification. *Id.*, 629 F.2d at 1165.

19.  A court must ensure that the effect of a proposed settlement on the rights of third parties, such as Movants, is neither unreasonable nor proscribed. *See United States v. City of Miami,* 664 F.2d 435, 441 (5th Cir. 1981)(en banc); *Terrazas v. Ramirez,* 829 S.W.2d 712, 719 (Tex. 1991).

**The Counties and Hospital Districts are independent from the clients of the Attorney General.**

20.  Article 5, § 24 of the Texas Constitution does not empower the Texas Attorney General to represent independent political subdivisions such as the Movant counties and hospital districts. No such authority comes from Chapter 402 of the Texas Government Code. The Texas Attorney General's powers reach no farther than those prescribed by the constitution and statutes. *Garcia v. Laughlin,* 285 S.W.2d 191, 194 (Tex. 1955). Acts beyond the scope of the Attorney General's delegated power are not binding. *State v. Reagan County Purchasing Co.,* 186 S.W.2d 128, 135 (Tex. Civ. App. -- El Paso 1944, writ ref'd w.o.m.).

21.  Counties and hospital districts have the authority to sue and be sued. When they do, they are represented by county attorneys or district attorneys, not the Attorney General. *See* Tex. Health & Safety Code §§ 281.056(b), 283.052(b) (county attorney or district attorney with the duty to represent the county in civil matters shall represent the hospital district in all legal matters).

22.  The Attorney General consistently disclaims any intention to represent entities such as Movants in this case. He also correctly denies the authority to settle their claims. *See, e.g.,* State of Texas' Response to Texas Association of School Boards' Risk Management Funds' Motion to Intervene and Brief in Support of Response, filed herein, which states at page 15:

> Second, the State of Texas does not, has not and will not represent TASB's interest in this litigation.

23. The Attorney General sued to recover only the state's: (a) Medicaid expenditures; (b) State Employee's Retirement System expenditures; and (c) charitable medical care expenditures at five specific state supported hospitals.

> At no time has the State of Texas changed its focus on these three programs. These three state-run programs have no direct or substantial relationship with the TASB Risk Management Fund.

*Id.* at p. 11-12.

> Further, the State of Texas has no intention to settle or compromise TASB's claim in the current litigation. The State of Texas remains focused on the three state-run programs already identified.

*Id.* at p. 13.

The Attorney General repeated this recently in the State of Texas' Response in Opposition to Montgomery County Hospital District's and Texas Municipal League Benefit Risk Pool's Motions to Intervene, filed herein, which states at page 2 as follows:

> The State previously opposed attempts to intervene by other, similarly situated government entities. (*See* the State of Texas' Response to Texas Association of School Board's Risk Management Fund's Motion to Intervene.) The Fourth Amended Complaint, like its predecessors, asserts no claims or causes of action on behalf of the Applicant or any similarly situated entities, nor has the State ever purported to represent or have the authority to represent such entities. The State's position on who it does or does not represent is clear and is in the record. The State simply does not represent the Applicant.

And later at page 8 he adds this:

> From the time of filing its Original Complaint, the State of Texas has focused on three distinct state-run programs: Medicaid, state employee's retirement system and state charitable medical care programs. The State of Texas' focus on these state programs which are in no way related to the Applicant's claims, kept this lawsuit manageable and facilitated settlement."

Movants and the Attorney General completely agree that he has not represented Movants or their claims in this lawsuit.

### Counties and hospital districts are not mere extensions of the state.

24. The Attorney General's settlement with the Tobacco Defendants does not automatically subsume Movants' claims because Movants are independent political entities. Courts

considering the immunity provided to the states under the Eleventh Amendment focus on important differences between the state and independent local political subdivisions such as counties and hospital districts. The distinguishing characteristics of independent local governments include their fiscal autonomy, self regulation, ability to sue and be sued and separate liability for claims.

### Hospital Districts are independent governmental entities.

25. In *Laje v. R.E. Thomason General Hospital*, 665 F.2d 724 (5th Cir. 1982), the court examined the El Paso County Hospital District, one of the Movants in this case. It noted that the El Paso County Hospital District was created pursuant to article 4494n Tex. Rev. Civ. Stat. Ann. (Vernon 1976), now Tex. Health & Safety Code § 281.001 et seq. *Id.*, 665 F.2d at 727. Under that statute, creation of a hospital district begins by local initiative.

26. A hospital district acquires fiscal independence through special local taxes entirely separate from other county and state taxes, and through bonds sold in the name and upon the full faith and credit of the hospital district. Title to land, buildings and equipment used for medical purposes vests directly in the hospital district.

27. The Board of Hospital Managers appointed by the County Commissioner's Court enjoys virtually unlimited autonomy and control over hospital affairs, including, significantly, the power to sue and be sued. It may promulgate rules and regulations for the operation of the hospital, make all hiring decisions and enter into contracts with counties and the state and federal government.

28. A hospital district may acquire property by eminent domain. Finally, and most telling in the view of the Fifth Circuit, the Texas Constitution provides that a hospital district "shall never become a charge against the State of Texas." Tex. Const. art. 9, § 4 (Vernon 1993); *see Laje, supra,* 665 F.2d at 727.

> We are left with the definite and distinct impression that a hospital district . . . is an independent legal entity in relation to the State of Texas. . . . [and] ... not an arm of the state.

*Id.*, 665 F.2d at 727-28.

29. The Movant hospital districts are independent governmental entities and political subdivisions of the State of Texas under the Texas Constitution and statutes. They operate a health

care system charged with maintaining the care of the indigent, including the indigent suffering from the harmful effects of tobacco use. *See* Tex. Health & Safety Code § 281.071(d) (if the patient and his relatives are not able to pay, the hospital district shall without charge supply the care and treatment to the patient). They accomplish this duty primarily with funds from local *ad valorem* taxes imposed on the residents of their counties.

30. Hospital districts can select legal counsel to prosecute claims and causes of action on their behalf. Movants have not authorized the Texas Attorney General to act as their attorney with respect to the prosecution of any claims against the Tobacco Defendants. The Texas Attorney General has no constitutional or statutory authority to represent them in civil proceedings. He cannot bind them to any settlement without their consent. No statute or case holds that the State of Texas or the Attorney General have the authority to settle or release their claims.

### Counties are independent local political entities.

31. *Crane v. State of Texas*, 759 F.2d 412 (5th Cir. 1985), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555, provides an in-depth analysis of the politically independent nature of counties, specifically Dallas County, another Movant.

> [W]hile the county is territorially a part of the state, yet politically it is also a corporation created by and with such powers are given to it by the State. In this respect it is a part of the state only in that remote sense in which any city, town or other municipal corporation may be said to be a part of the state.

*Id.* 759 F.2d at 416, quoting *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed 766 (1890). As the *Crane* court concluded,

> Texas counties are not mere arms or agents of the state; they are independent units of local government.

*Id.* 759 F.2d at 420. Following *Crane*, *Van Ooteghem v. Gray*, 774 F.2d 1332, 1335 (5th Cir. 1985) holds that Harris County, another Movant, also is an independent unit of local government. *See also,* Tex. Const. art. XI §§ 1,3; Tex. Rev. Civ. Stat. Ann. arts. 4413(32b); 6252-18a(b)(2); 6252-19, § 2(1)(counties are units of local government); *Tuveson v. Florida Governor's Counsel on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir. 1984) ("independent political entities, such as counties");

BRIEF IN SUPPORT OF MOTION TO INTERVENE TO OBTAIN A DECLARATION OF RIGHTS BY DALLAS COUNTY, DALLAS COUNTY HOSPITAL DISTRICT, EL PASO COUNTY, EL PASO COUNTY HOSPITAL DISTRICT AND HARRIS COUNTY, HARRIS COUNTY HOSPITAL DISTRICT - Page 9      LITDAL:175224.1 34856-1

*Wheeler v. Mental Health & Mental Retardation Authority of Harris Co. Texas*, 752 F.2d 1063, 1072-73 (5th Cir. 1985), *cert. denied*, 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (MHMRA is more like a county or city than an arm of the state).

32. The attributes of financial independence are important to the political independence of counties. Even the State of Texas has maintained that counties are fiscally autonomous from the state. *Crane, supra,* 759 F.2d at 419 n.7.

> Nothing . . . suggest[s] that the State may seize at will funds raised by the County through properly authorized taxation, bond issues or sale of property.

*Id.* 759 F.2d at 418.

33. Just as the State of Texas cannot seize Dallas, Harris or El Paso County's funds, neither can it seize their legal claims through a settlement and release. The causes of action against the Tobacco Defendants belong to the counties and hospital districts as their property, separate and apart from the state. *See id.,* 759 F.2d at 418, n.6 (The decision in *City of Waco v. Bridges*, 710 F.2d 220 (5th Cir. 1983), *cert. denied*, 465 U.S. 1066, 104 S.Ct. 1414, 79 L.Ed.2d 741 (1984), "makes no sense whatsoever if Texas counties can have no property of their own distinct from the state.").

34. Payment of claims against a county cannot come from the state treasury under the immunity provided to states by the Eleventh Amendment. *Crane, supra,* 759 F.2d at 417-19. So, by the same logic, payments to the county for its claims cannot flow only to the state treasury. The flow of the Tobacco Defendants' settlement payments only to the state treasury conflicts with the assertion that Movants' claims have been released.

**<u>Counties and hospital districts can bring their own claims against the Tobacco Defendants</u>.**

35. Each county is an integral part of the state, and, as such, is endowed with a certain amount of sovereignty. *Collingsworth County v. Myers*, 35 S.W. 414, 415 (Tex. Civ. App. -- 1896, no writ). They "may sue . . . take and hold, and dispose of private property . . . for such uses and purposes as subserve the public good." *Bell County v. Alexander*, 22 Tex. 350, 359 (1858). So can hospital districts.

36. Counties and hospital districts can independently exercise the right to maintain common law causes of action against the Tobacco Defendants in pursuit of "quasi-sovereign" interests. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982); Memorandum Opinion and Order re: Defendant's Motions to Dismiss Counts 1 - 3 and Counts 4 - 17 of the State's Second Amended Complaint.

37. The Court need not decide the full range of causes of action available to Movants or the extent of their damages to resolve the controversy over the scope of the release in the settlement. Movants can explore the limits of their claims in another forum, if the Court declares that their claims are not released. At a minimum, Movants will maintain actions for common law fraud, misrepresentation and negligence.

38. Movants' damages are substantial. The State of Texas' damage model for only five state supported hospitals calculated over $72 million in expenses attributable to smoking. The five hospital districts before the Court have comparable claims for unreimbursed indigent health care attributable to tobacco use, independent from any asserted by the State of Texas in this case. The Court should not sweep Movants' claims, without consideration, into the state's release of its own specific and limited claims.

39. Local governments shoulder the burden of uninsured health care, funded by the property tax dollars levied on the residents of the counties and hospital districts. They provide much care unreimbursed by private insurance or Medicaid. For example, California's counties spend an estimated $200 million or more per year to treat tobacco-related diseases of persons who cannot pay and are not covered by Medicaid or other health insurance. Texas' Medicaid compensation schedule is narrowly drawn, placing a greater financial burden on local health care providers than other states. In the aggregate, local governments, such as Movants, spend over $26 billion annually to provide the primary safety net of health care in this country.

## Conclusion

40. Movants seek simple and straightforward relief that this Court can and should bestow. The Court should grant intervention and declare that the settlement of the State of Texas' claims

against the Tobacco Defendants incorporated in the Final Judgment does not release any claims Movants may have against the Tobacco Defendants. To do so is just, right and honorable and preserves to all parties the positions they fairly can have expected to hold at the conclusion of this case. The Court will not disrupt or delay the settlement, Final Judgment or proper payment of settlement funds to the State of Texas if it grants Movants' request. The Court simply will assure the right of the local sovereigns of millions of citizens to have their own day in court.

Respectfully submitted,

JENKENS & GILCHRIST,
A Professional Corporation
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202
214/855-4500      Fax: 214/855-4300

_____
Robert R. Ries
State Bar No. 16914500

ATTORNEYS FOR DALLAS COUNTY AND DALLAS COUNTY HOSPITAL DISTRICT, EL PASO COUNTY AND EL PASO COUNTY HOSPITAL DISTRICT AND HARRIS COUNTY AND HARRIS COUNTY HOSPITAL DISTRICT

Jose R. Rodriguez, El Paso County Attorney
State Bar no. 17146500
El Paso County Courthouse
500 E. San Antonio Ave., Rm. 203
El Paso, Texas 79901-2496
(915) 546-2050      (915) 546-2133 fax

OF COUNSEL FOR EL PASO COUNTY AND EL PASO COUNTY HOSPITAL DISTRICT

Michael P. Fleming, Harris County Attorney
State Bar no. 07130600
Harris County Courthouse
1001 Preston, Suite 634
Houston, Texas  77002
(713) 755-5101        (713) 755-7965fax

OF COUNSEL FOR HARRIS COUNTY AND HARRIS COUNTY HOSPITAL DISTRICT

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 1998, a true and correct copy of the foregoing document has been forwarded to all known counsel of record in accordance with the provisions of Fed. R. Civ. P. 5 and the Case Management Order.

_____
Robert R. Ries

# KIRKLAND & ELLIS

PARTNERSHIPS INCLUDING PROFESSIONAL CORPORATIONS

200 East Randolph Drive
Chicago, Illinois 60601

Stephen R. Patton
To Call Writer Direct:
312 861-2406

312 861-2000

Facsimile:
312 861-2200

February 12, 1998

## VIA FACSIMILE AND CERTIFIED MAIL, RETURN-RECEIPT REQUESTED

Michael P. Fleming, Esq.
County Attorney
1001 Preston, Suite 634
Houston, Texas 77002-189

Re: January 16, 1998 Settlement Agreement
in State of Texas v. The American Tobacco Co., et al.,
United States District Court, Eastern District of Texas,
Texarkana Division, Civil No. 5-96-CV-0091

Dear Mr. Fleming:

I am writing this letter on behalf of Philip Morris Incorporated, R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, and United States Tobacco Company, in response to your letter dated January 21, 1998, concerning the above-referenced settlement.

The January 16, 1998 Settlement Agreement referenced in your letter was entered into by the State of Texas, through its duly authorized representative, Attorney General Dan Morales. The Agreement expressly defines the "State of Texas" to include "any department, subdivision or agency of the State, regardless of whether a named plaintiff," and specifically provides that it "shall be binding on and inure to the benefit of . . . all subdivisions, public entities, public corporations, [and] instrumentalities" of the State. Pursuant to the agreement, defendants agreed to make billions of dollars of payments and to provide other consideration in exchange for a release and discharge from any and all manner of claims, damages, and liabilities of any nature whatsoever "that the State of Texas (including any of its . . . subdivisions, political and otherwise), public entities, corporations, instrumentalities and educational institutions, and whether or not any such entity participates in the settlement)" may have against defendants.

London         Los Angeles         New York         Washington D.C.

EXHIBIT A

Case 5:96-cv-00091-DF-HWM Document 4946 Filed 02/19/98 Page 15 of 15 PageID #: 49213

February 12, 1998 1:51pm -- From '  861 2200 2512' -- Page 3
2/12/98  THU 12:55 FAX 312 861 2200 2512    KIRKLAND & ELLIS                                    ☒003

## KIRKLAND & ELLIS

Michael P. Fleming, Esq.
February 12, 1998
Page 2

        Accordingly, any claim that Harris County or the Harris County Hospital District believe they may have for reimbursement of medical costs allegedly attributable to smoking-related illnesses or with respect to any other matter covered by the Settlement Agreement has been finally released and discharged.

very truly yours,

Stephen R. Patton

SRP:js

cc:    The Honorable Judge David Folsom
       The Honorable Dan Morales
       Harry G. Potter, III, Esq.
       Joseph F. Rice, Esq.
       Meyer G. Koplow, Esq.
       Arthur F. Golden, Esq.
       Arthur Stevens, Esq.
       Richard H. Verheij, Esq.