IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

FILED-CLERK
U.S. DISTRICT COURT

98 MAR 13 PM 2: 38

TEXAS-EASTERN

BY _____

| | | |
|---|---|---|
| THE STATE OF TEXAS<br>        Plaintiff | §<br>§<br>§ | |
| v. | § | |
| | § | |
| THE AMERICAN TOBACCO<br>COMPANY; R.J. REYNOLDS<br>TOBACCO COMPANY; BROWN &<br>WILLIAMSON TOBACCO<br>CORPORATION; B.A.T.<br>INDUSTRIES, P.L.C.; PHILIP<br>MORRIS, INC.; LIGGETT GROUP,<br>INC.; LORILLARD TOBACCO<br>COMPANY, INC.; UNITED STATES<br>TOBACCO COMPANY; HILL &<br>KNOWLTON, INC.; THE COUNCIL<br>FOR TOBACCO RESEARCH – USA,<br>INC. (Successor to the Tobacco Institute<br>Research Committee); and THE<br>TOBACCO INSTITUTE, INC.,<br>        Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO. 5:96-CV-0091 |

### AMICUS BRIEF OF NINETY-SEVEN TEXAS COUNTIES
### PERTAINING TO THE SETTLEMENT AGREEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME 97 Texas Counties, as friends of the court, and file this amicus brief pertaining to the settlement agreement in this case. Amici would respectfully show the court as follows:



# I.
## IDENTIFICATION OF THE AMICI

The friends of the court consist of the following 97 Texas counties:

Anderson County, Angelina County, Archer County, Austin County, Bandera County, Baylor County, Blanco County, Bowie County, Brewster County, Briscoe County, Brooks County, Burnet County, Camp County, Cass County, Callahan County, Clay County, Cochran County, Coleman County, Comal County, Dallam County, Deaf Smith County, Delta County, Duval County, El Paso County, Erath County, Fannin County, Fayette County, Franklin County, Frio County, Freestone County, Gaines County, Gillespie County, Gregg County, Grimes County, Guadalupe County, Hale County, Hall County, Hardeman County, Hardin County, Henderson County, Hockley County, Hopkins County, Houston County, Howard County, Hunt County, Hutchinson County, Irion County, Jack County, Jefferson County, Jim Hogg County, Jim Wells County, Johnson County, Kimble County, King County, Kinney County, Lamar County, Lamb County, Lampasas County, Lee County, Llano County, Madison County, Mason County, Medina County, Menard County, Mills County, Montague County, Morris County, Navarro County, Newton County, Parker County, Parmer County, Pecos County, Polk County, Red River County, Refugio County, Runnels County, Rusk County, Sabine County, San Jacinto County, San Saba County, Scurry County, Shackelford County, Stephens County, Stonewall County, Swisher County, Taylor County, Terrell County, Throckmorton County, Trinity County, Upshur County, Val Verde County, Victoria County, Washington County, Wharton County, Wichita County, Winkler County, Wise County

These counties are political subdivisions of the State of Texas. Each of these counties believes it has incurred significant damages that can be attributed to the conduct of Defendants in this case. These damages consist primarily of medical services and expenses provided indigent residents of these counties from county funds, but may also include costs pertaining to the county retirement system and the health care benefits provided county employees and dependents. These damages are separate and distinct from the damages alleged by the State in this case. Moreover, these damages are not addressed in the settlement agreement previously approved by the court in this case.

The interests of these counties cannot be adequately represented by any party or attempted intervenor in this case. Specifically, the Montgomery County Hospital District has asserted that it

is a representative member of a "class of numerous hospital districts, counties, cities, municipal corporations and other political subdivisions and local governmental entities or combination of such entities." See Amended Motion to Intervene at p.4. The interests of these amici are not and cannot be adequately represented by the Montgomery County Hospital District. The interests of Texas counties, and the damages suffered by counties as a result of the conduct of defendant, are separate and distinct from the alleged damages of the Montgomery County Hospital District. The statutory obligations of counties are different from the obligations imposed upon hospital districts. Counties should not be compelled to participate in this action under a hospital district representative. Therefore, while amici do not oppose the District's Motion to Intervene, amici do oppose the District's request for certification as a class representative.

## II.
## INDIGENT HEALTH CARE

The Indigent Health Care and Treatment Act requires Texas counties to provide health care assistance to certain indigent residents. See Tex. Health & Safety Code Ann. §§61.021, 61.022. Pursuant to the Act, the counties must provide: 1) inpatient and outpatient hospital services; 2) rural health clinics; 3) laboratory and x-ray services; 4) family planning services; 5) payment for prescription drugs; 6) physician services; and 7) skilled nursing facility services, regardless of the patient's age. Id. §61.028. Counties may provide additional health care services. Id. Counties may address this responsibility by creating a public hospital. However, in this circumstance, the county still has the obligation to provide sufficient funding to the hospital to provide mandatory health care assistance. Id. §61.062.

Counties incur significant expenses for indigent care, with indigent care expenditures exceeding 10% of some counties' total budgets. In this lawsuit, the State of Texas has not

claimed county indigent care expenses as damages, and these damages have not been included in the compensation included in the Settlement Agreement in this case. Moreover, it appears that no party to this action has reviewed or analyzed the damages suffered by Texas counties, and that these damages were not considered by the parties in assessing the settlement value of this case.

## III.
## DISCUSSION OF THE SETTLEMENT AGREEMENT

Various individuals and entities have moved to intervene in this case for the purpose of challenging the settlement agreement in this case. The purpose of this brief is to advise the court that two general provisions of the agreement merit close scrutiny; these two provisions are objectionable to Texas counties and appear to be contrary to law.

First, the settlement agreement purports to settle claims on behalf of Texas' political subdivisions (See, Settlement Agreement at 16). This is inappropriate for two reasons. First, the amici counties are not parties to this case, and their respective claims cannot be settled in their absence. As noted by other amici, as well as intervenors, the Attorney General of Texas is not authorized to represent Texas counties without their consent. The amici counties have not been consulted regarding either the filing or settling of this suit, and the amici counties have neither requested or authorized the Attorney General to represent their interests in this matter. Therefore, the Attorney General has not represented these counties and cannot settle their claims.

The second problem with the Settlement Agreement is that the Attorney General proposes a specific allocation of the settlement proceeds. As pointed out by other parties, the Attorney General lacks authority to allocate and expend the settlement proceeds. This court should not sanction terms of the agreement that are contrary to law.

In addition, a review of the settlement agreement establishes that the proposed allocation of settlement sums does not compensate Texas counties for any damages incurred as a result of the conduct of Defendants. In this regard, the Attorney General has informally communicated that it was never his intention to settle these claims for counties. Certainly, the counties were not a part of any settlement negotiations. Therefore, the Settlement Agreement should not erroneously indicate that it has determined county claims.

## IV.
## SUGGESTIONS OF THE AMICI

The amici acknowledge the significance of this lawsuit and the potential benefits to the State and its citizens from the proposed settlement. However, the amici counties, as political subdivisions, advise the court that this Settlement Agreement is unlawful to the extent it purports to settle the claims of Texas counties. The Court should amend the judgment to reflect that the claims of Texas counties have not been litigated or settled in this case.

Alternatively, it is inappropriate for the court to adopt, as part of its judgment, the specific proposal of the Attorney General for the disposition of the settlement funds. Under the Texas Constitution, the Attorney General has no authority to allocate these funds. Moreover, his specific proposals do not address or compensate those, such as amici counties, who have also been damaged as a result of the conduct of Defendants. From the language of the agreement, these proposed allocations may be adjusted. The settlement agreement provides that the parties "anticipate that the funds will be so allocated" or for such other purposes as the State of Texas may determine. If the court finds the settlement should be approved, Amici counties request that the Court amend the judgment to specify that the specific proposal for the allocation of the funds is not approved by the court's judgment.

Respectfully submitted,

ALLISON, BASS & ASSOCIATES, L.L.P.
Wahrenberger House
208 W. 14th Street
Austin, Texas 78701

(512) 482-0701 telephone
(512) 480-0902 facsimile


By: *[signature]*
James P. Allison
State Bar No. 01090000
C. Rex Hall, Jr.
State Bar No. 08745900


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded via certified mail, return receipt requested, to all known counsel of record on this 11th day of March, 1998:


*[signature]*
James P. Allison
C. Rex Hall, Jr.